UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RACHEL R. DAVIS, | ) |
| | ) |
| *Plaintiff* | ) |
| | ) Cause No. 1:19-cv-2723-RLM-MPB |
| v. | ) |
| | ) |
| GOVERNMENT EMPLOYEE | ) |
| INSURANCE COMPANY a/k/a | ) |
| GEICO, | ) |
| | ) |
| *Defendant* | ) |

## ORDER

Plaintiff Rachel Davis sued GEICO for violations of her Family Medical Leave Act rights after her employment with GEICO was terminated in May 2019. GEICO has moved for summary judgment on all of Ms. Davis's claims. For the following reasons, the court grants GEICO's motion [Doc. No. 49] in part and denies it in part.

### I.   BACKGROUND

GEICO hired Ms. Davis as a sales representative at GEICO's call center in Carmel, Indiana, in December 2013. Ms. Davis's job duties were to answer calls from prospective customers, provide customers with an insurance quote, answer questions during the sales process, and close sales. On the morning of May 2, 2019, Ms. Davis was on a call with a prospective customer when another GEICO sales representative, Irma Mendoza, approached Ms. Davis. The two women were previously friends but had a falling out in early 2019. While Ms. Davis was still

on the phone, Ms. Mendoza told Ms. Davis to "keep [Ms. Mendoza's] name out of Ms. Davis's] mouth." Ms. Davis stood up, and the women exchanged words for about 30 seconds until two other co-workers, Tyson McKinney (whose desk was beside Ms. Davis's) and Reggie Pearson, stepped in to break up the argument. Mr. McKinney then escorted Ms. Mendoza to the manager's office.

When Mr. McKinney returned to his desk, words were immediately exchanged between him and Ms. Davis. Multiple employees heard Ms. Davis repeatedly call Mr. McKinney derogatory names during their argument, including "gay," "soft," "trash," "bitch," "pussy," "fucking faggot," and "nigga." Ms. Davis disputes having used these words but admits that she was very upset and words were exchanged. She doesn't remember exactly what was said during the argument, and she might have called Mr. McKinney names. Mr. McKinney became agitated, but Mr. Pearson intervened again and escorted Mr. McKinney to the manager's office. Ms. Davis then went to human resources and made a statement about what all had happened.

Human Resource Manager Rosalynd Jester and Human Resource Supervisor Trina Davis opened an investigation into the incident later on May 2. Over the course of two days, Ms. Jester and Ms. Trina Davis interviewed Ms. Davis, Ms. Mendoza, Mr. McKinney, Mr. Pearson, and three other GEICO employees who saw the arguments, uncovering the derogatory language that Ms. Davis directed at Mr. McKinney. Ms. Jester and Ms. Trina Davis reported their findings to Sales Director Benquetta Williams, who decided to terminate Ms. Davis based on her use of derogatory language that violated GEICO's Fair

Workplace Policies. Ms. Davis was notified of her termination on May 6, 2019. Ms. Mendoza wasn't terminated but was given a written warning for initiating the confrontation with Ms. Davis. There is no evidence that either Ms. Mendoza or Mr. McKinney used derogatory language during their confrontations with Ms. Davis.

### A. Ms. Davis's FMLA Leave

On October 10, 2018, Ms. Davis was granted intermittent FMLA leave through July 19, 2019, allowing her to be incapacitated for up to three occurrences per week not to exceed one day per occurrence.

On April 9, 2019, Ms. Davis was running late for work and texted her supervisor, Josephus Jordan, at 8:36 A.M. saying that she would be late and asking for her tardiness to be approved as FMLA leave. The same day, Ms. Davis and Mr. Jordan had a coaching session (as was periodically common) after which Mr. Jordan recorded that he "reviewed updated coaching plan with Rachel and discussed the importance of being here and prompt communication if going to be late or absent. 180 policies sold is the goal. Gold is the goal." GEICO's call-in policy required Ms. Davis to notify Mr. Jordan of an absence or late arrival at least 30 minutes before her scheduled start time. Ms. Davis followed up, saying "I will contact you if I will not make it in by 8:30, as well as continue to be proficient in all metrics, and I'll also sell as many policies in a month as possible. 180 is the goal."

Ms. Davis then visited the human resources office and asked if it was normal for Mr. Jordan's comments about Ms. Davis "being here" to be in a coaching plan. Human resources representative Leslie Timmis sent a note to human resources representative Romel Swayne asking him: "Can you see Rachel Davis? She is clearly upset and very afraid to say something about [Mr. Jordan]. She feels as if she is in trouble with her [FMLA leave]." Mr. Swayne made a note that same day saying that he talked with Ms. Davis about her FMLA leave and that Ms. Davis "[r]efused to write a statement or move forward with any concern" about Mr. Jordan's comments about "being here." Later that afternoon, Ms. Davis texted Mr. Jordan asking if he could clock her out for the rest of the day using her FMLA leave. Mr. Jordan did so.

The next day, April 10, Mr. Jordan and Ms. Davis exchanged text messages about updating Ms. Davis's FMLA certification:

| | |
|---|---|
| Ms. Davis: | I'm going to see my doctor today. If you could email the paperwork to me that would be great. [Ms. Davis's personal email]. I'll let her know what's going on. I see her at 930. |
| Mr. Jordan: | Im going to my appointment this morning. I won't be coming in until later this morning. |
| Ms. Davis: | Can you send it to my email once you get in? |
| Mr. Jordan: | I have to send it to HR…they are the ones who send it. That's why I was saying to talk to your DR. First to make sure she is able to give an updated recommendation based on things with you now. After that HR still needs to review and will make a decision on whether or not to update based on Dr. Recommendations, business need & capacity. I will let your coordinator know as soon as I get in. Another thing to watch out for is how many hours you are using. Regardless of approvals, you only get 465hrs in a rolling 12 months. I will also let you know exactly how many hours you have left. |
| Ms. Davis: | Okay |
| | [approximately three hours pass] |

Mr. Jordan: I spoke with HR...I am about to submit the request to update. Your Dr can either request to file new paperwork or file an adjustment as we discussed. Be on the lookout for the email. As of today, assuming you miss the entire day, you currently have 114.81 approved hours left. Once it is finished it will not gain anytime back until Oct. 2019. That is regardless of any approvals FML approvals. Just wanted to make sure you are completely aware. If you have any questions, please let me know.

Ms. Davis received an email the next day from GEICO's leave administrator with the forms need to recertify Ms. Davis's FMLA leave. Ms. Davis returned the forms and was approved for FMLA leave for the period of April 10, 2019, through April 9, 2020, allowing her to be incapacitated for up to three occurrences per week not to exceed one day per occurrence *and* take two additional breaks per day not to exceed 30 minutes per break.

When Ms. Williams terminated Ms. Davis on May 2, 2019, Ms. Williams was unaware that Ms. Davis was approved for or had taken FMLA leave.

### B.  Ms. Davis's Job Application

When Ms. Davis originally submitted her job application with GEICO in November 2013, she represented that she had left her prior job at Allstate Insurance because the "job ended." She also represented that, before Allstate, she left her job at the Indiana Bureau of Motor Vehicles because she "accepted opportunity at Allstate." GEICO discovered during Ms. Davis's deposition that neither of these representations were true and that Ms. Davis had been terminated from both of these positions. GEICO has submitted an affidavit from

Ms. Williams in which she attests that she would've terminated Ms. Davis had she known of Ms. Davis's misrepresentations.

II.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011) ("Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law."). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

III.   DISCUSSION

"The FMLA establishes two categories of protections for employees. First, the Act provides eligible employees the right to take unpaid leave . . . because of a serious health condition . . . . After the period of qualified leave expires and the employee returns to work, she is entitled to be reinstated to her former position or to an equivalent position with the same benefits and terms of employment." Lewis v. School Dist. #70, 523 F.3d 730, 741 (7th Cir. 2008); 29 U.S.C. § 2614(a). To ensure these rights, "[t]he FMLA makes it 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided' under the Act." Id. (quoting 29 U.S.C. § 2615(a)(1)).

Second, "the FMLA also affords employees protection in the event that they are retaliated against because of their choice to exercise their rights under the Act." Id. The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). An employer can't discriminate or retaliate against an employee for using FMLA leave.

Ms. Davis claims that GEICO violated both of these protections—that GEICO violated her substantive FMLA rights by interfering with her right to use FMLA leave, and that GEICO discriminated against and retaliated against her for using FMLA leave by terminating her. Each of these arguments are discussed below.

*A. Ms. Davis's FMLA interference claim.*

Ms. Davis argues that GEICO violated her substantive rights because (1) her supervisor, Josephus Jordan, interfered with her FMLA leave by discouraging her from taking it, and (2) GEICO demanded that Ms. Davis recertify her FMLA certification even though six months hadn't passed since Ms. Davis's last FMLA certification, constituting a per se violation of Ms. Davis's FMLA rights. GEICO says that Ms. Davis wasn't discouraged from using FMLA leave, and that Ms. Davis can't establish a technical violation of the FMLA.

"The burden to prove FMLA interference lies with the plaintiff-employee." Darst v. Interstate Brands Corp., 512 F.3d 903, 908 (7th Cir. 2008). "To prevail on an FMLA-interference theory, the plaintiff employee must prove that: '(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.'" Pagel v. TIN Inc., 695 F.3d 622, 627 (7th Cir. 2012) (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 825 (7th Cir. 2011)). The first four elements aren't in dispute; GEICO only claims that Ms. Davis can't prove the fifth element.

"An interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim requires only proof that the employer denied the employee his or her entitlements under the Act." Scruggs v. Carrier Corp., 688 F.3d 821, 825 (7th Cir. 2012). "The implementing regulations make clear that the ways in which an employer may

interfere with FMLA benefits are not limited simply to the denial of leave. Interference also encompasses 'us[ing] the taking of FMLA leave as a negative factor in employment actions' and 'discouraging an employee from using such leave.'" Preddie v. Bartholomew Consolidated School Corp., 799 F.3d 806, 818 (7th Cir. 2015) (citing 29 C.F.R. § 825.22(b), (c)). "[T]he critical question is whether the employer's actions would discourage a reasonable employee from taking FMLA leave." Id. at 818 n.35 (citing Cole v. Illinois, 562 F.3d 812, 816 (7th Cir. 2009)).[1]

### 1. Ms. Davis's Supervisor

To back up her argument that Mr. Jordan discouraged her from taking her FMLA leave, Ms. Davis cites as evidence Mr. Jordan's comments about "being here," Ms. Timmis's email to Mr. Swayne asking him to speak to Ms. Davis, and text messages Mr. Jordan sent Ms. Davis concerning her FMLA recertification.

On the morning of April 9, 2019, Ms. Davis had been running late for work and texted Mr. Jordan last minute asking for her tardiness to be approved as FMLA leave. Mr. Jordan granted that request even though Ms. Davis hadn't complied with GEICO's call-in policy that required her to notify Mr. Jordan of an

---

[1] Terminating an employee to prevent her from taking FMLA leave might also interfere with an employee's FMLA rights, but only if the termination wasn't for performance-based reasons. Simpson v. Office of Chief Judge of Circuit Court of Will Cnty., 559 F.3d 706, 712 (7th Cir. 2009). Ms. Davis doesn't contend that her termination interfered with her FMLA rights, only that Mr. Jordan's purported discouragement and GEICO's purported request for recertification before her termination did. So the court won't analyze the reasons why GEICO fired Ms. Davis in analyzing her FMLA-interference claim.

absence or late arrival at least 30 minutes before her scheduled start time. During the coaching session later that day, Mr. Jordan reported: "reviewed updated coaching plan with Rachel and discussed the importance of being here and prompt communication if going to be late or absent. 180 policies sold is the goal. Gold is the goal." Ms. Davis then spoke to Human Resources, which lead to Human Resources Representative Leslie Timmis asking Human Resources Representative Romel Swayne to speak to Ms. Davis because "[s]he is clearly upset and very afraid to say something about [Mr. Jordan]. She feels as if she is in trouble with her [FMLA leave]." Mr. Swayne later noted that he spoke with Ms. Davis and that Ms. Davis "[r]efused to write a statement or move forward with any concern" about Mr. Jordan's comments during the coaching session. Ms. Davis then notified Mr. Jordan that she was leaving early for the day, taking FMLA leave. The next day, Ms. Davis and Mr. Jordan exchanged text messages in which Mr. Jordan explained the process of updating Ms. Davis's FMLA certification.

On summary judgment, the facts are viewed in the light most favorable to Ms. Davis (the non-moving party) and every reasonable inference is drawn in her favor. South v. Illinois Envtl. Prot. Agency, 495 F.3d 747, 751 (7th Cir. 2007) ("It is not [the court's] role to evaluate the weight of the evidence, . . . or to determine the ultimate truth of the matter, but simply to determine whether there exists a genuine issue of triable fact."). Ms. Davis had just taken approved intermittent FMLA leave hours before Mr. Jordan discussed with her the importance of "being here." A reasonable juror could conclude that those comments—particularly

considering their proximity in time to Ms. Davis taking FMLA leave—would have discouraged a reasonable person from taking FMLA leave in the future.

GEICO argues that Ms. Davis was never denied FMLA leave (nor was she shy about taking it) which shows that GEICO didn't interfere with Ms. Davis's FMLA rights. An employer doesn't have to succeed in discouraging an employee from taking FMLA leave to interfere with that employee's FMLA rights. Jennings v. Ford Motor Co., 2008 WL 3853369, at *5 (S.D. Ind. Aug. 15, 2008). GEICO argues that Ms. Timmis's note to Mr. Swayne should be disregarded as inadmissible hearsay insofar as it's offered to prove that Ms. Davis was upset and very afraid to say something about Mr. Jordan, and that she felt as if she was in trouble with FMLA leave. The note seems to meet the requirements of Federal Rule of Evidence 801(d)(2)(D) as an opposing party's statement and therefore isn't hearsay. And evidence that an employer's actions actually discouraged an employee from taking FMLA leave can be used as evidence to support an FMLA-interference claim. Preddie v. Bartholomew consolidated School Corp., 799 F.3d 806, 818 (7th Cir. 2015).

Ms. Davis claims that the text messages Mr. Jordan sent her the day after the coaching session show FMLA interference. She argues that Mr. Jordan "increased the heat" of his discouragement by "demanding that GEICO's human resources and FMLA leave departments insist that Ms. Davis have her healthcare provider recertify Ms. Davis's need for FMLA leave."

That argument is unpersuasive. The only evidence she cites is her FMLA recertification application—which doesn't provide any information about why

Ms. Davis sought recertification—and the relevant text messages (pp. 4-5, *supra*). The text messages show Ms. Davis asking Mr. Jordan to email her the needed FMLA recertification paperwork and Mr. Jordan explaining how the FMLA recertification process works. GEICO, on the other hand, cites Mr. Jordan's declarations in which he explains that he "told Rachel that if she wanted to increase her frequency of leave, she should consider getting an updated certification from her healthcare provider." And the result of her recertification was that Ms. Davis's available intermittent FMLA leave increased. To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2). Ms. Davis hasn't done that on this point—the text messages don't support the existence of a genuine issue of material fact as to whether a reasonable person would have been discouraged from taking FMLA leave.

2. *Ms. Davis's FMLA Recertification*

Again relying on her FMLA recertification application and Mr. Jordan's text messages about FMLA recertification, Ms. Davis argues that GEICO committed FMLA interference and a per se violation of her FMLA rights by demanding that she recertify her FMLA leave. Citing 29 C.F.R. § 825.308(b), Ms. Davis says that

GEICO was required to wait six months from her original certification before requesting a recertification of her FMLA leave. GEICO committed a per se violation of her FMLA rights because Ms. Davis's FMLA leave was originally certified on October 24, 2018, and GEICO demanded recertification on April 11, 2019—13 days short of Ms. Davis's six-month mark.

But as already explained, Ms. Davis hasn't provided the court with any evidence that GEICO or Mr. Jordan demanded that Ms. Davis recertify her FMLA leave, thereby refuting GEICO's contention that Mr. Jordan merely suggested she consider getting an updated certification if she wanted to increase her frequency of leave. No genuine issue of material fact exists regarding Ms. Davis's FMLA-interference claim based on her FMLA recertification.

*   *   *

A genuine issue of material fact exists regarding Ms. Davis's FMLA-interference claim based on Mr. Jordan's comments about the importance of "being here" and whether those comments would have discouraged a reasonable person from taking FMLA leave.

### B. *Ms. Davis's FMLA Retaliation Claim*

Ms. Davis's second claim is that GEICO discriminated and retaliated against her for using FMLA leave. She argues that her role in and reaction to the fight that Ms. Mendoza started on May 2, 2019, provided GEICO with a pretext for terminating her, but GEICO's disparate application of its own rules shows that GEICO's true reason for terminating her was because she took FMLA leave.

13

GEICO says that Ms. Davis was terminated because of the racially discriminatory and homophobic slurs she directed at Mr. McKinney, and that her termination had nothing to do with her FMLA leave.

"The difference between a retaliation and interference theory is that the first requires proof of discriminatory or retaliatory intent while an interference theory requires only proof that the employer denied the employee his or her entitlements under the Act." Goelzer v. Sheboygan County, Wis., 604 F.3d 987, 995 (7th Cir. 2010). "A plaintiff can avert summary judgment on an FMLA retaliation claim either by proffering direct or circumstantial evidence of her employer's discriminatory motivation [for taking an adverse employment action], or by establishing that, after taking FMLA leave, she 'was treated less favorably than other similarly situated employees who did not take FMLA leave, even though she was performing her job in a satisfactory manner.'" Lewis v. Sch. Dist. # 70, 523 F.3d 730, 741 (7th Cir. 2008) (quoting Burnett v. LFW, Inc., 472 F.3d 471, 481–482 (7th Cir. 2006)). An employee doesn't have an FMLA retaliation claim if she would have been fired for poor performance regardless of her FMLA leave. Lucas v. PyraMax Bank, FSB, 539 F.3d 661, 667 (7th Cir. 2008) (plaintiff must "submit evidence showing that [the employer] demoted or fired her because she took valid leave" to survive summary judgment); Kohls v. Beverly Enters. Wis., Inc., 259 F.3d 799 (7th Cir. 2001).

The proper standard of causation remains unclear. In 2008, the court of appeals held in Lewis v. Sch. Dist. # 70 that a plaintiff in an FMLA retaliation case "need not prove that retaliation was the only reason for her termination;

she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." 523 F.3d 730, 741 (7th Cir. 2008) (internal quotations omitted). The Lewis court cited Culver v. Gorman & Co.—a Title VII retaliation case—in applying that standard of causation. Five years later, the Supreme Court in University of Texas Southwestern Medical Center v. Nassar held that "traditional principles of but-for causation" apply to Title VII retaliation claims, and that a mere showing that the protected conduct was motivating factor in the employer's decision was insufficient. 570 U.S. 338 (2013). The circuit court has since then applied a but-for standard to FMLA retaliation claims, Riley v. City of Kokomo, 909 F.3d 182, 188 (7th Cir. 2018), but hasn't expressly overruled the Lewis v. Sch. Dist. # 70 line of cases that apply a motivating factor causation standard. Several other district courts remain confused on the issue. *E.g.*, Nigh v. School Dist. of Mellen, 50 F. Supp. 3d 1034, 1054-1055 (W.D. Wis. 2014); Haggerty v. St. Vincent Carmel Hosp., No. 1:17-cv-04454, 2019 WL 2476682, at *20-21 (S.D. Ind. June 13, 2019). The court declines to weigh in on the issue of which standard applies because even if Ms. Davis only needs to show that her FMLA leave was a substantial or motivating factor in her termination, her retaliation claim can't survive summary judgment—much less under a but-for causation standard.

The evidence Ms. Davis proffers to show GEICO's discriminatory intent behind terminating her is more circumstantial than direct. She argues that a jury could conclude that GEICO's stated reason for terminating her was pretext

for unlawful retaliation based on the disparate manner in which GEICO disciplined Ms. Davis as compared to Ms. Mendoza and Mr. McKinney.

Ms. Davis is correct that more favorable treatment of similarly situated employees outside of her protected class can be evidence of pretext. Coleman v. Donahoe, 667 F.3d 835, 851 (7th Cir. 2012). "When a plaintiff presents evidence showing that an employer's explanation has no factual basis, a reasonable factfinder may infer that (1) the employer is lying about its true motive and (2) because the employer is in the best position to assert the reason for its decision, that it offered a false one in order to cover up a discriminatory motive. Presentation of evidence of this sort creates a genuine issue of material fact as to whether the employee was fired for a discriminatory reason." Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 601 (7th Cir. 2001).

Showing pretext "normally entails establishing that 'the [compared] employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" Snipes v. Illinois Dep't of Corrections, 291 F.3d 460, 463 (7th Cir. 2002) (quoting Radue v. Kimberly–Clark Corp., 219 F.3d 612, 617–618 (7th Cir. 2000)). In determining whether GEICO's stated reason was pretextual, the court won't "evaluate whether the stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge. A pretextual decision, then, involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for

some action.'" Harden v. Marion County Sheriff's Dept., 799 F.3d 857, 864 (7th Cir. 2015) (internal quotations omitted). To show this lie, Ms. Davis "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [GEICO's] stated reason that a reasonable person could find it unworthy of credence." Harper v. C.R. England, Inc., 687 F.3d 297, 311 (7th Cir. 2012).

As evidence of pretext, Ms. Davis recites a litany of GEICO's rules that Ms. Mendoza and Mr. McKinney broke but nevertheless weren't terminated for, even though Ms. Davis was for only breaking one of GEICO's rules. Ms. Mendoza and Mr. McKinney were also never investigated for their rule violations (even though GEICO had evidence of their noncompliance), but Ms. Davis was. She also argues that Ms. Mendoza and Mr. McKinney were more to blame for the May 2, 2019 fight, but she was terminated, and they weren't. Finally, she argues that the basis on which she was terminated was false by submitting an affidavit that outright denies she used any offensive slurs against Mr. McKinney.

The problem is that Ms. Davis hasn't offered any evidence to show that either Ms. Mendoza or Mr. McKinney engaged in the same type of prohibited conduct that she was terminated for—specifically, using the racially discriminatory and homophobic slurs she directed at Mr. McKinney. And while Ms. Davis offers Ms. Mendoza as a comparator, GEICO cites evidence to show that Ms. Mendoza also utilized intermittent FMLA leave. Ms. Davis hasn't identified an employee outside of her protected class who engaged in similar conduct, so she is left without a comparator to establish GEICO's stated reason for terminating her was pretext. GEICO, on the other hand, interviewed six eye-

17

witness employees about the language Ms. Davis directed at Mr. McKinney. They all corroborated each other. GEICO also interviewed Ms. Davis about the language, and she stated that she "was very upset so [she] might have" called Mr. McKinney names.

Whether a reasonable juror could conclude that Ms. Davis didn't actually use the cited slurs against Mr. McKinney is questionable, but GEICO doesn't have to show that. GEICO only has to show that it had an honest belief that Ms. Davis used the slurs, in other words, that its stated reason for terminating Ms. Davis wasn't pretextual. Harden v. Marion County Sheriff's Dept., 799 F.3d at 864; Carruth v. Continental General Tire, No. 98-cv-4233, 2001 WL 1775992, at *12-13 (S.D. Ill. June 21, 2001). GEICO has carried that burden; Ms. Davis hasn't identified the "weaknesses, implausibilities, inconsistencies, or contradictions" in GEICO's stated reason for terminating Ms. Davis such that a reasonable juror could find that the stated reason was pretext.

In addition to showing that its stated reason wasn't pretext, GEICO cites evidence that Ms. Davis's FMLA leave wasn't a motivating factor in her termination. Ms. Williams—the decisionmaker who terminated Ms. Davis—was unaware of Ms. Davis's FMLA leave or Ms. Davis's discussion with Mr. Swayne when she decided to terminate Ms. Davis. Moreover, Ms. Davis's conduct constituted grounds for termination regardless of her FMLA leave. Other than what was included in her pretext argument, Ms. Davis points to no evidence that GEICO harbored a discriminatory intent when it terminated her. She hasn't

18

shown that a reasonable juror could conclude that her use of FMLA leave was a motivating factor in GEICO's decision to terminate her.

Ms. Davis's affidavit affirmatively denying that she used any offensive slurs contradicts her earlier deposition testimony that she can't remember what she said to Mr. McKinney and that she might have called him names. "As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1055 (7th Cir. 2000). So when "deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken . . . ." Russell v. Acme–Evans Co., 51 F.3d 64, 67–68 (7th Cir. 1995). Ms. Davis hasn't shown that her deposition testimony was mistaken, so the court disregards her affidavit for summary judgment purposes. The affidavit wouldn't have changed the outcome—even considering Ms. Davis's affidavit attesting that she didn't actually use the racially discriminatory and homophobic slurs, GEICO has offered enough evidence to show that no reasonable juror could find that it didn't honestly believed that Ms. Davis used the slurs against Mr. McKinney. So GEICO's stated reason for terminating Ms. Davis wasn't pretext.

### C.  *Ms. Davis's Cat's Paw Theory of Liability*

Finally, Ms. Davis argues that Ms. Williams didn't actually make the final decision to terminate her because Ms. Williams wholly relied on the reports and the investigation provided to her by subordinates. Thus, even if Ms. Williams

herself didn't harbor discriminatory animus, Ms. Davis can establish discriminatory intent behind her termination by showing that Ms. Williams's subordinates harbored discriminatory animus against her and affected Ms. Williams's termination decision. This is argument is called the "cat's paw" theory of liability.

The cat's paw theory applies "when a biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action. The plaintiff must provide evidence that the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased subordinate's scheme was the proximate cause of the adverse employment action." Robinson v. Perales, 894 F.3d 818, 832 (7th Cir. 2018).

Ms. Davis says that a reasonable juror could conclude that Ms. Williams's subordinates—including Mr. Jordan and Mr. Swayne—harbored discriminatory animus because of Mr. Jordan's remarks about the importance of "being here," Mr. Swayne's conversation with Ms. Davis about those remarks, and their involvement in Ms. Davis's FMLA recertification.

Ms. Davis hasn't identified what exactly was discriminatory about Mr. Swayne's follow-up conversation with her about her concerns over Mr. Jordan's remarks, or Mr. Jordan's involvement in helping her obtain FMLA recertification at her own request. Discriminatory animus can't be inferred from that evidence.

Furthermore, there is nothing in the record linking Mr. Jordan's comment about the importance of "being here" to Ms. Williams decision to terminate Ms.

20

Davis. "[S]tatements of a person who lacks the final decision-making authority may be probative of intentional discrimination, but only if that individual exercised a significant degree of influence over the contested decision." Nichols v. Southern Illinois University-Edwardsville, 510 F.3d 772, 781 (2007) (internal quotations omitted). But "stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment." Sun v. Bd. of Trs. of Univ. of Ill., 473 F.3d 799, 813 (7th Cir. 2007). Nothing in the record shows that Ms. Williams even knew about the coaching session in which the "being here" comments were made or about Ms. Davis's discussion afterwards with Mr. Swayne. Nothing in the record shows that Mr. Jordan exercised a significant degree of influence over Ms. Williams's decision to terminate Ms. Davis. Mr. Jordan wasn't at work on the day of the fight, and neither Ms. Jester or Ms. Trina Davis interviewed Mr. Jordan during their investigation of Ms. Davis's use of racially discriminatory and homophobic slurs. Nothing in the record shows that Ms. Williams consulted Mr. Jordan in determining whether to terminate Ms. Davis.

With no other evidence to point to, Ms. Davis can't show that a reasonable juror could conclude that a subordinate actually harbored discriminatory animus against her, so her cat's paw theory of liability fails.

*   *   *

GEICO is entitled to summary judgment on Ms. Davis's retaliation claim because no reasonable juror could conclude that discriminatory animus was a motivating factor in GEICO's decision to terminate Ms. Davis.

21

D. *The After-Acquired Evidence Defense*

GEICO seeks an order limiting Ms. Davis's economic damages based on the after-acquired evidence defense, arguing that if it had known about Ms. Davis's terminations from the Indiana Bureau of Motor Vehicles and then from Allstate, it wouldn't have hired her in the first place and would have terminated her if it had learned of the previous terminations during her employment.

"[A]fter-acquired evidence of an employee's misconduct may limit damages. An employer may be found liable for employment discrimination, but if the employer later—typically in discovery—turns up evidence of employee wrongdoing which would have led to the employee's discharge, then the employee's right to back pay is limited to the period before the discovery of this after-acquired evidence." Sheehan v. Donlen Corp., 173 F.3d 1039, 1047 (7th Cir. 1999) (internal citations omitted). "[T]he inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often say they will discharge employees for certain misconduct while in practice they do not." Id. at 1048. "Proving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made." Id. The employer must show by a preponderance of the evidence "that the after-acquired evidence would have led to her termination." Id. at 1047-1048. If the employer establishes the defense, the burden shifts back to the plaintiff "to produce affirmative evidence" showing that the employer wouldn't have actually terminated her. Washington

v. Lake County, Ill., 969 F.2d 250, 256 (7th Cir. 1992), *rev'd on other grounds*, McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995).

Ms. Davis argues that GEICO hasn't offered any evidence that it actually would have terminated her had it known about the reasons for her separation from her two prior employers to meet its burden in establishing the defense. GEICO says that it designated such evidence—Ms. Williams's declaration in which she says: "Had I known during Rachel Davis's employment at GEICO that she had lied on her employment application and committed resume fraud, I would have requested the matter to be investigated and, if shown to be true, terminated Ms. Davis's employment."

In Washington v. Lake County, Ill., the court of appeals held that a credible affidavit asserting that the employer would have fired the employee for the misconduct revealed by after-acquired evidence is sufficient to meet the employer's burden in establishing the after-acquired evidence defense. 969 F.2d 250, 256 (7th Cir. 1992), *rev'd on other grounds*, McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995); *see also* Coleman v. Keebler Co., 997 F. Supp. 1102, 1122-1123 (N.D. Ind. 1998) (explaining Washington v Lake County, Ill.). GEICO has met its initial burden in establishing the after-acquired evidence defense by providing Ms. Williams's affidavit attesting that Ms. Davis would've been fired if it had known about the reasons for Ms. Davis's separation from two of her prior employers. The burden was on Ms. Davis to produce affirmative evidence to refute GEICO's evidence, but she hasn't done so. So GEICO is entitled to an order limiting Ms. Davis's economic damages based on the after-

acquired evidence defense. Ms. Davis is precluded from seeking economic damages beyond January 31, 2020.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART GEICO's motion for summary judgment [Doc. No. 49]. The court DENIES GEICO's motion for summary judgment on Ms. Davis's FMLA-interference claim based on Mr. Jordan's comments about the importance of "being here" and whether those comments would have discouraged a reasonable person from taking FMLA leave. The court GRANTS GEICO's motion in all other respects.

SO ORDERED.

ENTERED: <u>August 9, 2021</u>

/s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution:  All electronically registered counsel of record